We've got consolidated cases. Mr. Escher? Yes. Good morning, Your Honors. I'm very pleased to be here. Actually, Your Honors, I was a clerk for Judge Ainsworth in this building back in 1977, and this is my first argument in front of the Fifth Circuit since then, so it's a big moment for me. Welcome back. Right. We've got two cases involved in this appeal. Well, there's two appeals, and it's been consolidated by Your Honors for argument. So I think I've got 25 minutes now and then five minutes on rebuttal. The first one is the Cotton case, which is an appeal from District Judge Brown's order denying the motion to compel arbitration, and the Gross case from District Judge Mills' order to the same effect. Basically, Judge Brown applied Judge Mills' reasoning in reaching the conclusion in her case. It involves essentially the same central legal issue, and that's whether the two lower courts' adoption of a state law standard of a formal legal device, such as a power of attorney for finding an agency relationship between the two plaintiffs and their elderly mothers under Mississippi law for purposes of entering into arbitration agreements is preempted by the Federal Arbitration Act as interpreted by the United States Supreme Court, most recently in the Concepcion and Marmot health care decisions. We also have an issue about the misinterpretation of Mississippi law, but I thought I would address the issue of FAA preemption first, and I would also note that under both federal law and Mississippi law, there is a strong presumption in favor of arbitration under both federal law and under state law. Now, the parties agree that the standard of review is de novo with respect to the determinative legal issue of preemption by the FAA. Neither district court went on to make a determination whether the evidence of actual or apparent authority would be sufficient under Mississippi law, absent the application of this preempted legal standard of a formal legal device for arbitration agreements and some other important contracts like real estate sales transactions. But given the de novo standard of review and the special importance of quick resolution of motions to compel arbitration under the FAA recognized in the Fifth Circuit decision in American Guarantee and Liability Insurance Company versus ANCO Installations, and that's at note 17 in that case, and also the Moses H. Cone case from the United States Supreme Court, this court can make that determination of actual or apparent authority under the correct interpretation of Mississippi law now or when your honors decide the issue. I don't think that there's a requirement that you all go ahead and apply the correct Mississippi law to what essentially are undisputed facts, but I think given the importance of trying to get quick resolutions of motions to compel arbitration, it makes more sense to do that now rather than sending it back down and having the potential of it coming back up to your honors once again. So the threshold issue in this case is whether the district court's, what I'm calling the formal legal device standard for arbitration and other important contracts is preempted by the FAA. And the answer to that rhetorical question is very clear. After Concepcion and also the Marmot health care case and also prior Supreme Court jurisprudence, I would cite to the Buckeye check cashing case, the Allied Bruce case and the Casarado cases, all of which are cited in Concepcion and Marmot health care to a lesser degree. State law must treat arbitration agreements the same as any contracts and the same as all contracts. The inclusion of some other important contracts like real estate transactions requiring a formal legal device doesn't save the differential treatment of arbitration agreements. And I would say, you know, as I was reading through the briefs on the way out here, I had a lot of time since I was coming from San Francisco, plaintiffs don't even really contest this issue on appeal. They admit that arbitration agreements, and I'm quoting now, cannot be treated less favorably than other contracts, end quote. Nor could they. I'm just jumping in, and I think that framework you put in the briefs, and it's helpful to hear it stated that way. So am I correct if I simplified your argument down to Mississippi doesn't actually have a legal device rule, but if it did, Concepcion would have invalidated that? Absolutely correct. Okay. So then that just leaves us with the gritty job of looking at these contracts. What was the scope of authority given by each principal to each child? So which case are we starting on? I would start with the cotton case, Your Honor. I think that one might be a little bit easier for me than the other one, but I think they're both easy. Let's start with the tough one then. Because in my mind, factually, you're right, that cotton is more difficult, so I'll ask that of opposing counsel. But gross, it's Ms. Wagner. She wasn't present. She wasn't present in the room when the contract was signed. Right. So let me go ahead and address that. Another thing, actually, I took a look at on the way out here was the discussion of the actual authority standard in the restatement third of agency, and I know that that's at a little bit of a higher level of abstraction, but it's pretty useful. I'm looking at Section 2.01. There's no reason to think Mississippi doesn't embrace the rates. There's no reason at all. In fact, there's every reason to think that Mississippi adopts the same rule. Right. And I'd say my basic takeaway from the comments to that section, and the actual text of it is really very clear, and I think it just means it's contextual, and I'm going to read it. It's very short. Quote, an agent acts with actual authority when, at the time of taking action, that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act, end quote. So we look either at, if you look at comment C, they make the point that the principal's expressive conduct can be either contextual in the sense of their presence, you know, the way they act. Any manifestation. Any manifestation, or it could be by words as well, and that it goes to the point of the agent's reasonable understanding of the principal's manifestation, and I'm reading from comment C at this point in time. So if I could take. . . But just jumping ahead, in that same provision, it's correct that when we look at scope, there are aspects of actions that a principal wouldn't authorize an agent, like a tort, like a crime, and specifically other acts that create legal consequences for a principal that are significant and separate from the transaction directed by the principal. And that's a very fair point, but I don't think that's a problem for us here, because the transaction we're talking about, we're not talking about somebody whose elderly mother is with them, or like maybe she's out in the waiting room, or she's still in the hospital room and they're out in the hall. They're talking to the people about the nursing home. The mother, in this context, has. . . The principal, here in connection with Gross, said he testified that his mother knew he was handling the paperwork for the nursing home and trusted him to do it without limitation. So there's no qualification. It's you handle the paperwork. But also there's evidence in that case that suggests that he felt that he had authority to handle her health-related matters. And this is certainly a health. . . Getting into a nursing home is certainly health-related, if not at the outset, sooner or later. So. . . But answer me a question. Normally when we get these cases, and we get nursing home cases, admission to nursing home cases, this isn't our first rodeo, usually the arbitration clause is wrapped up in the main contract. And if that had been done here, then you'd say, well, she wanted me to get her admitted to the nursing home, that's a health-related decision, amen, the end, I win. But here, the nursing home says, we're going to break this into two separate agreements. You made that decision, you and your client made the decision to put it in two separate agreements, and one is not a condition to the other. So why haven't you, in effect, created this problem on your own? It's a fair question, Your Honor. You can ask your client that, or your client might ask you. The fact's quite right. And the reason I say that is that although the execution of the arbitration agreement and a number of other agreements in connection with the admission, there's an agreement about do not resuscitate order, there's an agreement about whether you want to sign on for beautician care, there's a whole bunch, there's six, seven, maybe ten separate documents that were signed by the agents. And, of course, they're not quarreling about their ability to enter into those agreements. But in the deposition, he's probed on each one, and each one of those relates to doctors, hospitals, health care. There's no question that, or maybe it'll be argued, that within his scope was to make decisions related to medical and health. But the point is here, you specifically said this isn't a condition of residency. Right. But this is an important qualification. It was optional for them to sign the arbitration agreement or not. They could still become admitted to the nursing home. We're not quarreling with that. But there's a specific provision in the arbitration agreement that says if you sign the arbitration agreement, it becomes part of the admission agreement. But that begs the question we're here to decide, which is whether or not that agent had authority to sign something that was not, in effect, before it was signed, a condition to admittance into the nursing home. I understand the question, but I guess my response would be the right way to look at the problem is to understand whether the whole context through manifestations, through conduct and words, indicated that the agent reasonably believed that they had the authority to enter into all of the paperwork associated with it. Am I right that in the deposition, you went through every single specific subject matter that Gross would have felt, but you never asked him, did you feel you had authority to sign the arbitration standalone document? He's never asked that. Well, I wasn't there, but . . . I know, but you know the record. Right. So every question is, did you have authority to sign documents? But then the sentence finishes, to have her health needs dealt with, to get her admitted. It's never, did you have authority to sign documents that waive legal rights or your right to a jury or to a trial. That may have been an improper question asking this particular plaintiff whether he thought that he had authority to enter into the arbitration agreement. He actually, the provisions of the arbitration agreement provide that the person signed in it says that they do have the authority to enter into the agreement, and of course he's highly motivated to disagree with that now. Do me a favor. Do you have it in your head or do you have it with you? I do have it with me. Because that was troubling for the Gross case for me also. It doesn't make sense to me what was signed. Her representative, the son, signs, but there are two places you can sign. Do you have it there? I've got it. Sorry to fumble with this. I'm having trouble finding it. I've got the whole set of agreements. Here it is. I've got it. He signs at the bottom. Right. And look at the language before it. If the resident, that's his mother, is unable to consent because of physical disability or mental incompetence or is a minor, the authorized representative is signing complete the following. But no one's contending she was disabled or mentally incompetent or minor, correct? I think that there's no evidence that she was mentally incompetent. Or any of those three. So the appropriate section to sign would have been the one that's blank. Well, they haven't really made this argument. No, I'm making it because this is vital to find out what authority. You're saying he had authority to do more than what I see he says he did in the deposition. We don't have a notarized power of attorney at all, unlike in Cotton. She wasn't even present. You just moments ago said it's all in the document. Then you look at the document and he signs where it makes no sense to me. The document does provide that the arbitration agreement becomes part of the admission agreement. There's no question about their ability to enter into the admission. But am I right? Just read. You know this by heart. Is the appropriate place that your client would say he should have signed the section that's blank, yes or no? I think he didn't sign it in the right spot. You think he did? He did not. Oh, he did not. I think he did not. But that doesn't mean that he didn't agree to it. I mean, if somebody signs the wrong line on one of these, either on the admission agreement, which it happens all the time, that doesn't mean that there isn't an agreement necessarily if there's some sort of error in the place that they sign it. He's never taken the position that he fraudulently indicated that she had no mental ability. Your burden of proof to establish that he was authorized by his mother, the principal, to do all the steps you contend he did. The one item we've got to suggest that is what you just pointed to, to the agreement, and it didn't get signed in the right place. That's troubling to me. Then I look at the deposition to understand what he thought he was authorized to do, and he clearly thought he was authorized to do health, medical, even residency. Every question he's asked is that. No one ever asks him, did she authorize you to waive her right to ever get into court if there's a mishap? Your Honor, if I could just turn back to the testimony where he says that his mother knew that he was handling the paperwork for the nursing home and that I would say that the paperwork isn't necessarily limited to health issues, and there were a number of other items that he signed for her on. But even if you've paraphrased it correctly, for the nursing home, you've been emphatic that with sort of best practices you didn't condition entry into the nursing home on the waiver. So it would make sense that he would sign and have authority to enter the paperwork for the nursing home, but that doesn't embrace, it explicitly disclaims. Well, the arbitration agreement is paperwork for the nursing home. That would be my position, Your Honor. But it's nonmandatory. It's not a condition. Well, he didn't say that she gave me the authority to do all that was absolutely required to get her in the nursing home. He didn't say that. He said that she authorized him to sign the paperwork for the nursing home, and he did do that, and the arbitration agreement was part of the paperwork. I want to make sure, as my time goes down, that we do address the Cotton case, because I think that that one is materially easier for me. You know, here we've got the daughter of an elderly resident. She was a stroke victim who was still mentally competent. There's an incompletely executed power of attorney, and the lower court itself indicated that it considered the incompletely executed power of attorney to be, in itself, strong circumstantial proof of agency, which it obviously is. It's another example of people not getting everything right. I mean, that's a context in which there are many unsophisticated individuals in a stressful context, and sometimes they make errors. Let me ask a question, a factual question, about that document. I had the idea that people signed up at the top where they filled in the names and then didn't sign below or something. Who signed up at the top? I don't know that it was signed, Your Honor. I believe that they fill in the name Ida Roberson, and then they fill in the names of the two daughters who are getting. . . Those aren't different signatures? No, I think they're all the same. I've got a copy of it if anybody. . . I just had the wrong idea. I had the idea that they had signed but maybe not in the right spot. No, that's not the case. It looks like somebody has handwritten in the name of the resident and the two daughters, the same person, and that the signature is by the notary. Of course, there's evidence that, in fact, they were interacting about this and that the resident, Ms. Roberson, on the phone, when she was on the phone with the notary, she said she understood the effect of the power of attorney and orally indicated her intent to have Cotton have the general power of attorney. And once again, going back, I think Your Honors are probably satisfied with this issue, but that the difference between being an actual agent and having a fully executed power of attorney, I think that it's one that the district court was simply wrong in concluding that there has to be a fully executed power of attorney, either under Mississippi law or as a matter of federal preemption under the FAA. There's evidence that the parties believe that the power of attorney was valid. The mother wanted a power of attorney for Cotton to, quote, go handle things for her, end quote. The mother intended to give Cotton the power of attorney to, quote, handle her affairs, no kind of limitation to any kind of medical issues. So the issue and the other engrossed about whether it's medical in character or not, that doesn't exist in the Cotton case. And the mother stated that she wanted Cotton to have authority to sign documents on her behalf and on and on. So I think the evidence of actual authority in the context of the Cotton case is really quite overwhelming if the correct standard is applied. I wanted to make just one point, Your Honor, that in one of the cases, the Gross case, there's this issue about the National Arbitration Forum, which the district judge didn't decide. And we noted that point in a footnote in our opening brief, indicating that we thought it wasn't appropriate for this court to deal with that issue because the court below hadn't dealt with it, and there was no discussion in our opponent's brief. He said if he's wrong, it's yet another obstacle. It only applies to Gross, right? That's right. But you've got Mississippi law Dillon. Below, you said Dillon's been superseded by Conception. Is that your position here? That Dillon, which would say that's an integral part, has been superseded by Conception? I don't understand that. I think I do understand it, and that's related to the Green v. Cash advance case, which is the Seventh Circuit Court of Appeal decision that basically says that the integral part test is inconsistent. We don't need to reach it. Not just do we not reach it. Easterbrook has suggested we're on the other side of that split, right? Our unpublished decision in Ransey, unpublished BP, we don't agree with Easterbrook's approach, do we? You come to a different outcome. You don't consider either Judge Easterbrook's approach or the approaches of some of the other federal courts of appeals. That would be the Conn v. Dill case. But that's the only circuit, and it's a split opinion, that has not even applied the integral part test. Is that correct? I think that only the Seventh Circuit has not applied the integral part test. But I'm assuming that you all aren't going to reach the NAF issue, but if that's not right, there's also a third— If we did reach it, the language here was mandatory. It wasn't permissive. Exclusively used those rules. Well, and the language of the FAA is mandatory as well, Your Honor, and it says shall appoint an alternative arbitrator. So the position that we have is that not only do we have the Seventh Circuit opinion on our side, but the Conn v. Dill case, which applies the integral part test, but comes out in our way, that's a Third Circuit case. There's also a Ninth Circuit case, the Redham case, and then there's also the Brown case. What about our case law, published case law, BP-Libya, is it? All of these—Redham—actually, I didn't write down the citation. There's another case, the Eleventh Circuit Brown v.— What does the Fifth Circuit law that's controlling on us say? There's no Fifth Circuit law that's controlling. There's only that one unpublished decision, which under your rule isn't binding precedent.  If you decide not to—find that there's agency and gross, you don't need to reach the NAF issue. Okay. If Your Honors have any other questions, I'd be happy to address them now. All right. Thank you, sir. You've reserved rebuttal time. Mr. Brooks? Good morning. I'm Brian Brooks. I'm from Greenbrier, Arkansas. It's a pleasure to be here again. I think this is my second trip here. Beautiful courtrooms. I think a foundational point that gets glossed over in these cases, and like Judge King, I've put up with some of these over the years, is that cases like these two are not FAA Section 2 cases. They are Section 4 cases. The primary issue is not whether the arbitration clause, arbitration agreements, will be enforced once it is determined for certain that there is a contract. It is whether there is a contract. And Section 4 deals with whether there is a contract. Concepcion and Marmat Health Care are both Section 2 cases. That is a principal difference in these two cases and where these briefs have gone. I'll be candid and say that that foundational point doesn't come out in anybody's briefing as strongly as it should. You and Judge King may know that, but I have not seen that. No, it's not here. Not in these cases. It may be here, but it's not in the briefing. You've got 30 minutes. In my mind, I'll just tell you where I am mentally, but I'm looking for it, is most of the argument you presented to me and the district court asserted isn't very convincing. This notion that there's a heightened legal device rule applicable to arbitration agreements in nursing home context, Concepcion would take a scythe and chop that out, I think. And yet, when I look at, I can't pronounce them, Hinnube and Monticello, they may not have been saying what the district court thought they were saying and what your brief, I thought, endorsed, that you've got to have this legal device, this heightened thing. They're just saying there was no evidence of authorization at all. Right? And therefore, I put those cases aside. I jumped right, as you heard me too, let's look at the contract here. And that's, as I went back through the briefing, and I think this is much clearer in the Cotton brief than it is in the Gross brief, and I will tell you I had more of a hand, I didn't have any hand in the Gross brief. I'm not going to criticize you at all, but the Cotton brief really, unfortunately, does put us in the predicament of relying on the legal rule because it embraces the legal rule and gives very little factual discussion. So in Cotton, where the facts are less compelling that the authority of the child was circumscribed, we also have less from the district judge other than Mississippi's got a heightened rule for arbitration agreements in nursing homes. I understand where you're coming from. Okay, so Conception . . . And I will break the case down this way. Number one, I think you never have to reach this Conception Marmot Healthcare preemption issue because in neither case, in my reading, the most liberal reading of what can give authority to somebody to do something for someone else, Golden Living did not meet that evidentiary threshold in either case. That's my primary point. I think that's the primary point from both of the briefs that this evidence simply isn't strong enough. She's in the room. We have a notarized power of attorney, and we have her child. Forgive me for forgetting what her name is. It was a woman, right? Yes. In her deposition, giving no limit to what she said she had agency authority to do. I don't agree that her deposition is that clear, and I don't agree that the spin to put on the power of attorney is that it is indicative of there being an agreement, a vesting of authority. Here's why I say that. With respect to the power of attorney to begin with, the blanks were written in, my understanding of the deposition testimony, were filled in by each person. That's what I thought. Ms. Roberson and her two daughters, each individually filled in. That's what I thought. I had the impression that they'd actually signed their names, thinking it was the signature line, but they didn't. They printed it or something, but each person filled it in. I was worried that they signed the wrong blank myself and looked specifically for that in the deposition testimony that is part of the record on appeal. And my reading is that they just wrote their names in. It was not an impression that they were signing. That was where it was supposed to be signed. Cotton. That's cotton, yes. And an unsigned power of attorney, a power of attorney that is never completed, I would submit to you, is just the opposite of evidence of a vesting of authority. It is an incomplete act. She stopped. We don't know why. And as a plaintiff's lawyer, I don't often get to say this. I don't have to know why because it's not my burden of proof. It's their burden of proving agency. There must be some explanation why that was not completed in order for it to have any value that helps Golden Living at all, and there is none. Well, it may not be independently sufficient, but your position is it has no evidentiary weight? That's the position, right? No, I take an even stronger position. It's a negative. It is a negative. What's the authority for either negative inference or zero value? Because the statute, the Mississippi statute. Do you have any case law? I don't have any case. I do not have any Mississippi case law. I have lurking in the back of my head cases from other states that I can't identify right at this moment. I'll submit a 28-J letter if they show up in my head. But you don't dispute the alternate position that oral grants of authority, if they're in specific terms, can be sufficient? I agree that none of the three cases that Judge Mills relied on and that Judge Brown seems to rely on as well specifically state that. But Mississippi law pretty clearly elsewhere says you can. I agree that Mississippi law says that oral grants of authority are effective. Now, where we part company, I suspect, is that those oral grants, I think, have to be specific. In fact, I think any grant of authority need to be specific, need to be very specific. In order to allow someone to act for me, I need to make that grant of authority specific to that act. And I think that's what the restatement says. I think that's what the cases say. So then Cotton in deposition says, you know, well, if she's sick, like, I need you all to do something for me. Things. I'll do anything. Whatever she needed done. Under your signature, it says, by my signature, I represent a person duly authorized by the resident to execute the agreement. She just speaks about any and all documents. To handle things if she wasn't available. She made statements other places in her deposition where her mom granted her authority to do things if her mother wasn't available. If she needed something. And then ask candidly, is it your understanding when your mother signed her name at the top, talking about the POA, did she believe she was completing the document to make it effective so you could use it? I don't know. I can't answer that. And then the most candid point that we cite in our brief is whether she was asked whether she was authorized to sign whatever documents might be necessary. And the answer was that her mother didn't authorize it. We just did it because we thought she needed it. So I think that if we had, if we were living in power of attorney world, rather than oral grant of authority world, there's such a thing as a springing power of attorney. Where the ability to act doesn't arise until some condition occurs. A lot of times these are durable powers of attorney that spring into effect upon incapacity. We make provisions so that our children can take care of us in the event we become incapacitated. But until that happens, thank you kids, I'll take care of myself. I'll decide where I go. I'll decide what rights I waive. I'll decide whether I go to the nursing home or whether I go somewhere else. And you don't get the ability to do that until there's an incapacity. I think that's what she said. In your case, if the district judge was wrong and the legal rule applied, is there analysis along the lines that you're suggesting to us now? That in fact it was only on unavailability? That was the scope? Did the district court ever make that finding? No. I agree with Mr. Escher that neither district court made a specific determination of whether the testimony that was provided in these depositions was sufficient to create authority under anything other than a power of attorney type rule. I agree that neither district judge made that determination. I thought in Gross the district court came a lot closer examining the facts alternatively. I'm sorry. I thought in Gross . . . that's my fault. I thought in Gross the district court did a lot more factual analysis as to scope. I agree, but I read this again last night, and the factual analysis is calling into question, saying there are many weaknesses in the testimony and that sort of thing, and also pointing out that Ms. Wagner was not in the room, was not anywhere to be found when the documents were signed. I agree that there is more analysis there, but Judge Mills stopped short of saying whatever testimony is there, it isn't enough. I agree with that. Now, and I think that's part of the reason I wanted to point out Section 4 of the FAA, because part of it says that if the making of the contract is at issue, the court shall have a trial, in fact, a jury trial. Now, presumably the way we get around that in a lot of these cases and have this de novo review, which I'll be candid with you, I've never completely understood in the context of Section 4, is that we have this deposition testimony and there's no testimony offered the other way, and you get to determine, or the trial court got to determine, what it meant. Our position is that neither child testified sufficiently enough to create the authority to enter into an arbitration clause. With respect to the Cotton case, I always want to say Roberson because we've named them based on the resident. The Cotton-Roberson case, because of the things that I mentioned, because we have an uncompleted, an incomplete act with respect to the power of attorney, and if she meant it to be, she simply had to sign it, which she never did. It has no effect, and in fact, the inference to be drawn from it is the negative inference that she didn't go through with it. She didn't vest the authority. And second, the qualifying statements made by Ms. Cotton in her deposition regarding whether her mother was available to do something was when she wanted to give her daughters the ability to act. Where are you? Are you not defending the district court's rulings on principle grounds that there's a legal device rule and that somehow that survives conception? Are you agreeing that that crux core legal ruling inherent in both is a mistaken ruling? No, and I'll get there in a second. My first point, though, is you don't have to get there. That's what I'm saying primarily is that on this evidence there is no agency created. But you're also saying that district courts made no finding on that? No, I am not. So what's the relief you'd be asking for? The relief I would be asking for would be alternative. Alternative number one, that you affirm the district court on the ground that it, district courts on the ground that they did not reach, which is that this evidence is insufficient to create the agency relationship necessary to waive the right to a jury trial and enter into an arbitration agreement. Alternatively, if you don't want to go that far, you can remand for a determination by the district court in the first instance on those questions and those cases. I think you can do either. I don't think it's necessary to remand because I don't think this evidence is sufficient enough. And frankly, Judge, you've done as good a job or better than I could with respect to Gross in explaining why that is so. But the point, I'm sorry. But are you independently defending the legal analysis below or not? Yes, I will now defend the legal analysis below. First of all, I think it is a fair inference from the Mississippi cases that Mississippi requires some degree of specificity up to something like a power of attorney, a guardianship, a conservatorship in order to vest authority. My view, my reading of those opinions is that they did not necessarily limit themselves to a document, but a significant and formal statement on the part of the resident to somebody else that, yes, this person has the ability to sign this kind of document for me and waive these rights. That degree of specificity, I think, is appropriate to read into the Mississippi cases. I get there. But those cases are preconception. So they may have been valid then. When you say this kind, you mean arbitration agreements. Well, it can be arbitration agreements. But look, I was a law clerk in the Eighth Circuit and was tasked with dreaming up hypotheticals for my judge as well at one point. So I was amused by your comment earlier in one of the other arguments that your law clerks are good at dreaming up hypotheticals. The hypothetical that I would dream up in a case like this is what degree of specificity does it take to grant a child the authority to enter into an automobile loan contract for his parent? If we were talking about an automobile loan contract, we would have no question, we would have no hesitation, I think, in saying that it better be awfully certain. There better be some direct manifestation by the parent to the finance and loan officer at the car dealership or at the bank that Mr. Gross over here has the authority to sign that automobile loan for me. I think that's what Judge Mills is saying. I don't think that's preempted by conception for two reasons. Number one, it is a simple matter of agency law that for some reason has gotten distorted away in these nursing home cases because we're dealing with this delicate issue of people in failing health needing to get into a nursing home. But if you put it in that simple context of selling the house, financing a car, it ain't one of those kinds of contracts. It's because the people on the other end, the finance company, whoever you're selling the house to, the title company, is going to require all of that in writing. That's not because looked at in the abstract under Mississippi law, you would need to have it in writing. It's because they're not in the business of transferring that much money without being absolutely clear that it got a document that's going to go into our file, our electronic file, that makes it clear that this person has the authority. I'm not being as clear as I need to be. I agree that they... That's their machinery. Their machinery will require a document. Right. The law, I think, requires a specific manifestation of authority by the principal that could be oral. But once you say that, you're disagreeing with the district court's rule. I don't read the district court rule. He said a formal legal device. To me, it would be sufficient to walk up to the nursing home personnel and look at the document and say, yes, he can sign that for me. We wouldn't be here then. Your rule would apply to doctor visits, hospital visits? Or is nursing home unique? No, nursing homes are not unique. It would apply to getting the car loan. I'm just trying to think about these people. In requiring attention, medical attention, this direct manifestation not in writing rule that you're articulating would extend to any medical visit of any sort. I think in order to waive a right for somebody or to bind another person, yes, there needs to be a direct manifestation of that degree of authority. I think that's what the cases and I think that's what the restatement says. This generic, son, I want you to handle things so I can get in the nursing home, or son, I want you to handle things so I can go see the doctor, that's not a manifestation of authority to do anything in particular. That's just not how it is. It's not how it is. It's not how people. You must not have an old mother. Well, I do. And you're her. I'm not. You're not, okay. I'm not. Yes. There you go. Well, my mom's not a good example. No, but I mean. Because my mom is going to do what she wants to do. Yeah, but I am serious when I say that this whole world of elderly parents happens a lot, overwhelmingly, on oral authorization to sign whatever needs to be done, take care of my health, get me into the nursing home. It all functions orally. That's just how it works. And that's why it is that the nursing home didn't ask for more. And they did ask. They made a standalone, and they made it voluntary. They seem to be doing good things, right? I agree. Being standalone and being voluntary are good things, yes. Being presented along with the rest of the admission agreement, I quibble with that. Let's have a specific conversation with people about what this means. The person who's waving the right about what it means. Well, that's also not the case. I mean, under Mississippi law, the agent himself can testify as to what his authority was, right? I am glad you brought that up. I've gone through these cases, and I agree that there will be plopped down in the middle of the opinions, the sentence. The agent's testimony alone can describe the scope of his authority. But in every one of those cases, the person who was the agent was already an agent by status. For example, in Walters against Stonewall Cotton, I remember this as the company town case. You mean legal status, guardianship, power of attorney? I'm sorry? What do you mean by status? In Walters, in that case, it was an employee. And really, the issue in that case was whether the quasi-sheriff was an employee. And it was often with that interesting set of cases about whether an off-duty police officer can bind his, can create respondeat superior liability for a private employer. And so it's an odd example. But because he was an employee already and already had a status as an agent, then his testimony could prove, could be used as evidence of the extent and scope of his agency. In the Waterwell case, Quick and Grice against Ashley, we're talking about a branch manager of the defendant, someone who very clearly was by status, by status an agent of the defendant. And his testimony could be used to give evidence of the scope of his agency. The Eaton against Porter case is, that's the car lot case where the car was repaired, is really an apparent authority case. But there it was again an employee, and the employee was the father of the owner of the company who had a desk and had cards and all of these things. And by status, he was already an agent. I don't find any case that anybody has cited in these briefs, and I didn't find any Mississippi case in my extra research before I came here, that says someone who doesn't already have by status, by context of who they are in relation to the principal, an agency status. That's what the oldest daughter has. Take it from me. Next of kin. Next of kin does not create, there is no law of which I am aware that says next of kin automatically creates an agency status. No, but the point is that the way it works out as a practical matter in nursing home hospital admissions with elderly people is that daughter or son comes in, signs the papers, and they're authorized to do that. I understand, but that status. At least there's evidence that they're authorized to do it. The status of child or spouse or nephew or whatever does not create agency relationships. No, I agree. Whereas in every one of these cases where the testimony of the agent was allowed to define the scope of his or her authority, there was a status of agency by terms of who they were. So what you're saying is family members don't fit in those categories. Yes. And I think maybe they do. I agree you probably know more about it than I do, but I would suggest that with elderly parents, they fit into this category. It is not a concept that I know of, certainly not in any Mississippi case, not in any Arkansas case, not in any Tennessee case, or other places where I've messed with this issue. It is not. The second . . . For any case post-conception that says this unique status, are you talking about admission in the thing, or are you talking about signing the arbitration agreement? I'm focusing on the arbitration agreement. But how would that . . . I know state Supreme Courts are pushing back against conception just as they were before it, but what case do you have post-conception that has this status rule to sign an arbitration agreement? Do you have any case? I was made aware of, and frankly have not read it yet, a recent Kentucky case that does this. Oh, boy. You've been made aware of it, but you haven't read it. I was made aware of it on the phone. I will find it, and if it is appropriate, I'll submit the letter. Okay, so if there isn't authority that you can describe now for that status rule . . . There's not. Do you have authority to remand when the district court didn't make Mississippi law preferably, that we would remand for an inquiry into scope of authority if those factual findings weren't made, the middle ground? Do you have any case law on that? Not off the top of your head. Okay, third, you say affirmed because the facts in the existing record stand for not sufficient authority. Best case. I'm sorry. Third option, just affirmed straight up. Yes. Factual finding not in the record, but as a matter of law, they didn't have scope of authority. That's correct. What's your best authority? My best authority is the Mississippi cases that have been cited in here, the HENU cases. Now, there is no Mississippi case that I am aware of that has analyzed this type of testimony. Right. I did not find one. Okay. That is something that is absent from the briefing on both sides, and I just don't see it. These cases . . . That's where the restatement of agency comes in. I'm sorry? That's where the restatement of agency comes in. Well, I still think . . . Mississippi does pay attention to that. I agree. But I still believe that under the restatement rule, these generalized statements of, you know, if I'm not available, you can sign stuff to get me in the nursing home, do not include this separate arbitration agreement. And a key point, which we've kind of bounced all around, is in HENU, in particular, and other Mississippi cases that have been cited in everybody's briefs, this is not a medical care decision because the arbitration agreement is a separate stand-alone agreement that is not a condition of admission. It's not part of the medical . . . I don't see how your position can be because they don't include arbitration. That would seem to be arbitration-specific problematic under conception. You would have to be saying he was given authority to do medical and residency but nothing else, not banking, not real estate, not arbitration, all equal. The second you distinguish arbitration, I think you've got a problem. Let me turn it this way. The grant of authority says what he has authority to do. In this case, he had authority to do medical decisions and he had authority to write checks on the bank account in gross. In Cotton, they had authority not to do medical decisions but only if mama wasn't available. That's it. Nothing else is included in their authority, not to buy a car, not to sell a house, or not to enter into an arbitration agreement. I wasn't as clear as I needed to be earlier about that. The scope of the authority is defined by the grant. If, for example, a power of attorney said, you can make all of these decisions for me, you can do anything for me that I can do for myself except enter into an arbitration clause because that person said you can't do it, that's not preempted by conception. That's because the principal didn't grant the agency. I talked right down to the zero. I didn't think I could do that with these two cases. If there are no more questions, I'll take them. You had some help spurring you along. Thank you. That's what this is about. Thank you, counsel. Thank you, Your Honors. I'll be very fast. The first point I would make is that my opponent keeps falling into treating arbitration agreements differently than other agreements for the agency issue and for other reasons as well. And so did the two district courts. And Concepcion doesn't allow that. And the argument that Concepcion is only about enforcing arbitration agreements, not about the formation of arbitration agreements, that's wrong as well. And we've got that issue fully dealt with on footnote six of our reply in the Cotton case. And it's quite clear under Concepcion they say, quote, although section two's savings clause preserves generally applicable contract offenses, nothing in it suggests an intent to preserve state law rules that stand as an obstacle to the accomplishment of the FAA's objectives. So we're plainly right on the FAA issue, and I recognize the difficult position my opponent was in in having to defend that position, albeit halfheartedly. On a point that Judge King made, the restatement of agency urges us in issues of actual authority to be focused on the actual context and on manifestations in context. And I would submit, Your Honors, that we're not talking about somebody that these older, elderly women going into nursing homes pulled off the street. We're talking about their children. And my mother's a good example. The reality is that these elderly women are counting on their children to make those decisions for them. And we're not just talking about the arbitration agreement. We're talking about all of the agreements that they entered into when they went into the nursing home. That includes the resident fund management service, the authorization to obtain petition services, the acknowledgement of written notices, and the Medicare secondary payer screening form, the representative payee document, the assignment of benefits form, the pharmacy choice, the resuscitation orders, and on and on and on. And, of course, our opponents here are only arguing about the arbitration agreement. They're not saying, oh, there wasn't agency to do all those other agreements. And remember, they're the plaintiffs in this case. They were the ones who signed the arbitration agreement, and they're trying to get out of the arbitration agreement based on their own signature of the arbitration agreement. And I would submit that even if you don't agree with me with respect to the existence of actual authority in the Gross case, that there's still a very good argument for a stopple in the Gross case because Gross is the one who's trying to get more money out of the nursing home because he thinks that he'll do better in court than he would in an arbitration. But he was the one who signed the arbitration agreement, along with all of the other agreements that were in connection with the admission. What's your best stopple case? I'd have to look. It'll be in my brief, Your Honor. That's the best I can say on that. Well, what's the detriment? The detriment, really, that's a very good point. And the detriment doesn't have to be losing money. All it has to be is a legal change in position. It's like the consideration in connection with the sale of Blackacre or whatever the example was from law school. All you need is a legal change in position. And we've covered that in the briefing. I'm not sure if it's in Gross or Cotton. I've lost track of it by now. But we have specifically addressed that issue, that that's all that's necessary. You don't have to lose money. You just need to change the legal position, which we plainly have. With respect to the general power of attorney, and I would note it was a general power of attorney that Ida Roberson signed, there's an issue. There's handwriting for Ida Roberson, Shirley Cotton, and Ann Reed. I believe that the testimony, and I took another look at it when my opponent was addressing you, that Ida Roberson was the one who wrote her name. And I think there was — What about the argument that even if it's notarized, it's not signed, that actually creates a negative inference? I think that given the entire context, that her handwritten name is totally sufficient to, if you look at the whole context, to indicate that she intended to grant the general power of attorney, and there's other evidence of that as well. That's what the notary thought. That's what the notary thought. They didn't do that great a job, but they knew what they were trying to do, and what they were trying to do was to give the general power of attorney to the daughter. And what's the surprise in that? Thank you. Judge Ainsworth would say you did a great job. Oh, thank you very much, Your Honor. I'm way better now than I was then. And I look back on it, and I think there are so many things I did wrong when I was a clerk, but I'm trying to improve all the time. Law clerks tend to do that, you know. Yeah. Okay. They get better with age. All right. Thank you. Counsel.